UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| SALOMON BROTHERS REALTY CORPORATION, ET AL. | * | CIVIL ACTION |
| VERSUS | * | NUMBER: 03-3214 |
| DEAN M. BOURGEOIS, ET AL. | * | SECTION "L"(2) |

## ORDER & REASONS

Pending before the Court is Salomon Brothers Realty Corporation ("Salomon") and Litton Loan Servicing, L.L.P.'s ("Litton") Motion for Summary Judgment (Rec. Doc. 46). For the following reasons, Salomon and Litton's motion is GRANTED.

### I.   BACKGROUND

On December 13, 1993, Dean M. Bourgeois and his wife, Wendy Mims Bourgeois, (collectively "the Bourgeois") bought a home located at 2700 Concordia Drive, LaPlace, Louisiana. Incident to this purchase, the Bourgeois' executed a note and mortgage in favor of the Bank of LaPlace. On the same date, this mortgage was assigned to Troy and Nichols, Inc. Through a merger, Chase Manhattan Mortgage Corporation ("Chase") subsequently acquired Troy and Nichols, Inc. In March 1994, the Bourgeois' defaulted on the mortgage and, on November 29, 1994, Chase assigned the mortgage to the United States Department of Housing and Urban Development ("HUD").

HUD operated a program whereby borrowers with Federal Housing Administration insured mortgages meeting certain criteria could apply for HUD assistance if their loan was in default. Through this assistance, known as the HUD Assignment Program, the borrower could

1

remain in their home by paying a reduced or suspended monthly amount for a predetermined period.

During this period, however, the actual amount owed was not waived. Instead, the loan continued to accrue interest, late charges, and penalties in accordance with the mortgage agreement. Furthermore, payments on the mortgage were first applied to past due amounts. Only if no such amounts remained, the payments were applied to past due interest. If both of these amounts were paid in full, the payments were then applied to the principal balance.

In a letter dated March 20, 1997, the Bourgeois' were informed that HUD would be transferring the servicing of their mortgage to Ocwen Federal Bank ("Ocwen") on April 1, 1997. Subsequently, the Bourgeois' received correspondence and financial statements from Ocwen that contained incorrect information. These errors were due to the mortgage becoming "crossed" with another account in the HUD Assignment Program. As a result, the location of the property and the interest rate of the loan were incorrectly listed.

In February 1999, First Madison Services, formerly Clayton National, Inc. ("Clayton"), began to act as servicing agent to loans held by HUD, including the Bourgeois' mortgage. At this time, the errors to the Bourgeois' account had not been corrected. In September 1999, these errors were finally corrected, and the Bourgeois' account was adjusted to correctly reflect all of the payments that had been remitted by them.

At no point during the Bourgeois' enrollment in the HUD Assignment Program, including the period from April 1997 to September 1999, were these payments sufficient to cure the arrearages on the account for interest, escrow, or advances. As a result, no payments were ever applied to the Bourgeois' principal balance.

On December 1, 2000, the Bourgeois' mortgage was assigned from HUD to Salomon.[1] In addition, Litton began servicing the Bourgeois' mortgage. On December 11, 2000, as a result of the servicing transfer, Litton sent a letter to the Bourgeois' notifying them that the servicing of their mortgage was being transferred from Clayton to Litton.

On September 8, 2001, Salomon filed a lawsuit against the Bourgeois' in the 40th Judicial District Court for the Parish of St. John the Baptist. In its state court petition, Salomon alleged that the Bourgeois' had defaulted on their mortgage by failing to make the monthly payment for October 1, 1997 and for all subsequent due dates.

On September 29, 2003, the Bourgeois' filed a reconventional demand against Salomon, Litton, and other parties. In the reconventional demand, the Bourgeois' first claimed that Salomon and Litton did not comply with the Real Estate Settlement Procedures Act ("RESPA") when the mortgage was transferred from HUD to Salomon. Specifically, the Bourgeois' asserted that Salomon and Litton failed to provide notice as to the assignment and servicing of the mortgage.

Additionally, the Bourgeois' alleged that Salomon's and Litton's actions constituted a tort under Louisiana Civil Code article 2315. Based on these two theories of liability, the Bourgeois' sought extinguishment of their debt and monetary penalties not to exceed $1,000.00 a day for the entire time the loan had been outstanding.

Following the Bourgeois' reconventional demand, Salomon and Litton removed this

---

[1] Citing to Exhibit 1 of its motion, which was the Assignment of Mortgage from HUD to Salomon, Salomon stated that the loan was assigned on December 29, 2000. On the face of the Assignment, however, it appears that the Assignment was executed on January 29, 2001, and became effective on December 1, 2000.

lawsuit to this Court.

## II. PRESENT MOTIONS

In their motion for summary judgment, Salomon and Litton argue that there is no genuine issue of material fact as to the Bourgeois' reconventional demand and that they are entitled to judgment as a matter of law. First, Salomon and Litton assert that Litton fully complied with the notice requirements of the statute and that Salomon was not required to provide the Bourgeois' with notice under RESPA. Second, Salomon and Litton argue that the Bourgeois' do not have a tort claim against them, but rather any claim that the Bourgeois' have is based purely in contract. Finally, Salomon alone moves for summary judgment as to its original state court petition, arguing that there are no genuine issues of material fact as to whether the Bourgeois' complied with the terms of the mortgage agreement.

## III. LAW AND ANALYSIS

Summary judgment is only granted if the pleadings, depositions, answers to interrogatories, and admissions, together with affidavits show that there is no genuine issue as to any material fact and that the defendant is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56. When considering a motion for summary judgment, the Court must "review the facts drawing all inferences most favorable to the party opposing the motion." *General Universal Systems, Inc. v. Lee*, 379 F.3d 131, 137 (5th Cir. 2004). If the party moving for summary judgment demonstrates the absence of a genuine issue of material fact "the nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." *Willis v. Roche Biomedical Laboratories, Inc.*, 61 F.3d 313, 315 (5th Cir. 1995).

     A.      The Bourgeois' Claim in Reconvention

         i.      RESPA Claim

RESPA provides certain consumer protections to individuals who execute a federally related mortgage loan. Among these protections is a requirement that "[e]ach transferee servicer to whom the servicing of any federally related mortgage loan is assigned, sold, or transferred shall notify the borrower of any such assignment, sale, or transfer." 12 U.S.C. § 2605(c)(1). Moreover, this notice "shall be made to the borrower not more than 15 days after the effective date of transfer of the servicing of the mortgage loan (with respect to which such notice is made)." *Id.* § 2605(c)(2)(A).

As used in § 2605, "servicer" means "the person responsible for servicing of a loan" and "servicing" means "receiving any scheduled periodic payments from a borrower pursuant to the terms of any loan." *Id.* § 2605(I)(2)-(3).

Furthermore, under § 2605, notice must contain the following information:

> (A) The effective date of transfer of the servicing . . . .
> (B) The name, address, and toll-free or collect call telephone number of the transferee servicer.
> (C) A toll-free or collect call telephone number for (i) an individual employed by the transferor servicer, or (ii) the department of the transferor servicer, that can be contacted by the borrower to answer inquiries relating to the transfer of servicing.
> (D) The name and toll-free or collect call telephone number for (i) an individual employed by the transferee servicer, or (ii) the department of the transferee servicer, that can be contacted by the borrower to answer inquiries relating to the transfer of servicing.
> (E) The date on which the transferor servicer who is servicing the mortgage loan before the assignment, sale, or transfer will cease to accept payments relating to the loan and the date on which the transferee servicer will begin to accept such payments.
> (F) Any information concerning the effect the transfer may have, if any, on the terms of or the continued availability of mortgage life or disability insurance or any other type of optional insurance and what action, if any, the borrower must take to maintain coverage.

(G) A statement that the assignment, sale, or transfer of the servicing of the mortgage loan does not affect any term or condition of the security instruments other than terms directly related to the servicing of such loan.

*Id.* § 2605(b)(3), (c)(3).

In its motion for summary judgment, Salomon contends that it was not required to provide any notice of the change in servicers because RESPA only requires servicers to provide notice. The Court agrees. Salomon did not service the mortgage loan. Instead, it was an assignee of the mortgage loan. Therefore, Salomon was under no obligation to provide the Bourgeois' with notice of the change in servicers.

Furthermore, Litton contends that it did provide the requisite notice and, thus, fulfilled its duties. The record clearly demonstrates that Litton, the servicing agent of Salomon, sent a letter to the Bourgeois' informing them that "on December 1, 2000, the servicing of [their] loan was transferred from Clayton National, Inc. as servicer for the Department of Housing and Urban Development to Litton Loan Servicing." This letter was sent within the fifteen days as required by § 2605(c)(2)(A). Furthermore, it fully complied with the requirements laid forth in § 2605(c)(3). Thus, Litton fulfilled its duties under § 2605. Accordingly, the Bourgeois' do not have a viable § 2605 claim against either Salomon or Litton.

    **ii.**    **The Bourgeois' Tort Claim**

The Bourgeois' allege that their servicing problems were never fixed and, as a result, Salomon and Litton caused them to suffer damages when they were reported to various credit bureaus. This allegation is factually inaccurate because the problems with the account were cured in September 1999, while the mortgage was owned by HUD and being serviced by First Madison. Furthermore, the record demonstrates that Litton properly credited the Bourgeois'

account for all payments made while the mortgage was being serviced by Litton.  Thus, there are no grounds for the Bourgeois' claim that either Salomon or Litton "have mixed up the accounts and payments to the accounts."  Additionally, the Bourgeois' have put forth no theory as to why Salomon or Litton should be liable in tort for any actions committed by the previous owners and servicers of the mortgage.

Moreover, the relationship that existed between the parties was strictly contractual in nature, arising out of the terms of the mortgage agreement.  "In Louisiana, it is clear that a financial institution only owes to a borrower the duty of complying with the contract between the institution and the borrower." *Landreneau v. Fleet Financial Group*, 197 F. Supp. 2d 551, 557 (M.D. La. 2002).  "[U]nless expressly set forth in a written agency or trust agreement, no fiduciary responsibilities of a financial institution arise toward customers or third parties." *Ultra Fabricators, Inc. v. M C Bank and Trust Co.*, 97-1947, p.6 (La. App. 1 Cir. 9/25/98), 724 So. 2d 210, 214.  Nothing in the record suggests that Salomon or Litton breached any contractual duty owed to the Bourgeois'.  Thus, the Bourgeois' general tort claim is without merit.

### B. Salomon's Claim

Salomon alleges that the Bourgeois' have defaulted on their mortgage loan and, as such, it is entitled to enforce the mortgage agreement.  In this regard, Salomon has filed a motion for summary judgment on its own claims.

Summary judgment is the proper procedural device to enforce a negotiable instrument when the defendant establishes no defense against enforcement. *Johnson v. Drury*, 99-608 (La. App. 5 Cir. 6/2/00), 763 So. 2d 103, 109.  "Once the holder of a promissory note proves the maker's signature, or the maker admits it, the holder has made out his case by mere production

7

of the document and is entitled to recover in the absence of any further evidence." *Thomas v. Bryant*, 597 So. 2d 1065, 1068 (La. App. 2 Cir. 1992). The record demonstrates and the Bourgeois' do not contest that they entered into a mortgage agreement. Therefore, Salomon has met its burden of production because "[o]nce the holder of a promissory note produces the note, he is entitled to the face amount on the note. Payment is an affirmative defense to a suit on a promissory note, and the burden is on the defendant to prove payment." *Gulf Coast Bank & Trust Co. v. Donnaud's, Inc.*, 99-1228 (La. App. 5 Cir. 4/25/00), 759 So. 2d 268, 272 (citing *Am. Bank v. Saxena*, 553 So. 2d 836 (La. 1989)).

Furthermore, the record demonstrates that the Bourgeois' have been in default on their loan since 1994. During their time in the HUD Assignment Program, they made payments towards their mortgage loan, but these payments were never sufficient to bring their account out of arrears. The Bourgeois' have attempted to cloud the issue by contending that some of the payments they made were credited to the incorrect account. The record, however, demonstrates that all such errors were corrected before Salomon ever acquired the mortgage.

Moreover, the Bourgeois' further argue that the affidavits provided by Salomon were insufficient to demonstrate that their account was in arrears. Even assuming that this is factually correct, which it is not, it is not Salomon's burden to prove that the payment has not been made. Instead, it is the Bourgeois' burden to prove that the payment has been made. The Bourgeois' have offered no evidence indicating or even suggesting that they complied with their obligations. As such, summary judgment in favor of Salomon is appropriate.

**IV. CONCLUSION**

For the forgoing reasons, Salomon and Litton's Motion for Summary Judgment is

GRANTED.

        New Orleans, Louisiana, this   25th   day of   July  , 2006

                                                              UNITED STATES DISTRICT JUDGE